MARIA D'AGOSTINO et al., respondents,

*v.*

JOHN D'AGOSTINO, appellant.

[Argued May term, 1945. Decided May 22d, 1945.]

On appeal from an order of the Court of Chancery, in which court Vice-Chancellor Sooy filed the following opinion:

"This matter comes before me on the return of an order to show cause why defendants John D'Agostino, John B. Ordille and Adolph Elmer should not be adjudged guilty of contempt for failure to comply with the final decree heretofore made in this cause.

"The final decree was entered on the 4th day of May, 1944. From this final decree an appeal was taken to the Court of Errors and Appeals, resulting in its affirmance. *D'Agostino* v. *Ordille, 136 N. J. Eq. 222.*

"The final decree, *inter alia,* contained a finding 'that complainant bought from or through the defendant, John D'Agostino, one-half of the outstanding capital stock of the defendant, L. N. Renault & Sons, Inc., amounting to 125 shares, and that the said Maria D'Agostino is the beneficial owner of one-half of said outstanding stock amounting to 125 shares out of a total issue of 250 shares; and that 75 shares of said stock are presently held in the name of the defendants, John D'Agostino or John B. Ordille, and that the said shares are held by said defendants for the benefit and use of complainant; and that the 50 shares of the capital stock of the defendant L. N. Renault & Sons, Inc., presently standing in the name of complainant is her absolute property and not the property of the defendant, John D'Agostino.'

"The final decree adjudged 'that the complainant, Maria D'Agostino, is the owner of one-half of the capital stock of the defendant, L. N. Renault & Sons, Inc., amounting to 125 shares out of a total issued and outstanding of 250 shares.' And it was further ordered, adjudged and decreed 'that the defendants transfer or cause to be issued to complainant a stock certificate of L. N. Renault and Sons, Inc., for 75 shares of the capital stock of said defendants so that after said transfer or issuance the shares standing in her name shall amount to 125 shares or one-half of the outstanding capital stock of said Company, and that said defendants make the necessary entries on the books and records of the defendant Corporation to carry this decree into effect.'

"After the coming down of the *remittitur,* complainant, through her counsel, demanded of the defendants that they comply with the terms of the decree by issuing to the complainant a certificate for 75 shares of the capital stock aforesaid. This I find as a fact the defendants have refused to do.

"Defendants say that they have at all times been willing to comply with the decree and have tendered to the complainant a certificate for 74 shares of said stock and desire to turn

over a certificate for one share of the stock which now stands on the books of the company in the name of Carmon D'Agostino. They say they are prevented from so doing by reason of the injunctive order heretofore issued restraining the defendants from transferring this share of stock. My holding is that irrespective of any restraining order, the turning over to Mrs. D'Agostino of the share of stock standing in the name of Carmon D'Agostino would not be a compliance with the final decree and that the tender made by the defendant is not in good faith.

"It appears that the defendant John D'Agostino, after the entry of the final decree in the above cause, and pending the time during which the matter was awaiting argument in the Court of Errors and Appeals, filed a bill of complaint in this court against Carmon D'Agostino, the general purpose of which was to have declared the ownership of the one share of stock standing in the name of Carmon D'Agostino. This bill was filed May 6th, 1944, and an order to show cause issued thereon and on the return day the defendants were ordered to refrain from selling, assigning or transferring said share of stock. This order was consented to by counsel for all parties, and notwithstanding the filing of the bill and the injunctive order made thereon, no steps have been taken by defendant since that time to prosecute said cause. In fact, not even subpoenas to respond have been issued.

"It is insisted by the defendant that the share of stock standing in the name of Carmon D'Agostino was one of the shares of stock originally owned by Margaret Renault and comprised one of the 125 shares which John D'Agostino purchased on behalf of his mother, and that the mother is not entitled to any shares of stock other than the 125 shares so purchased by John D'Agostino for his mother. This is clearly not so. Mrs. D'Agostino was declared to be the owner of a one-half interest in the Renault Company and John D'Agostino was ordered to deliver to her a one-half stockholding interest, and he cannot avoid this by something that he himself has done rendering it impossible, as he claims, to deliver the full 125 shares of stock. What happened, according to the evidence, was that after John D'Agostino had purchased

for his mother the one-half stockholding interest from Margaret Renault that he personally caused a re-issuance of stock of the Renault Company so that one share was put in the name of Carmon D'Agostino. Of this action Mrs. D'Agostino had no notice and was never aware thereof until the time of the final hearing in this cause. The shares of stock held by John D'Agostino, other than these 125 shares, are as much impressed with the trust enforced by the mother through the final decree in this cause as are the 125 shares actually purchased from Margaret Renault. John D'Agostino could not have given one, five, ten or more shares of the Margaret Renault stock to outsiders and thus escape compliance with the final decree.

"The attempt of the defendant John D'Agostino is to retain control of the company by issuing to his mother 74 shares of stock and retaining 75 shares for himself. He started the litigation to determine the ownership of the one share and he cannot transfer the *onus* of carrying on that litigation or the institution of new litigation to his mother in order that she shall get that to which she is entitled.

"The defendants John B. Ordille and Adolph Elmer both in open court acknowledged that they are willing to make any transfers necessary to carry out the final decree and that on the presentation by John D'Agostino to them of the necessary certificates of stock they will properly execute the same. These two defendants admit they have no beneficial ownership in the subject-matter of this litigation. They are, therefore, discharged from the contempt proceedings.

"The order of the court will be that John D'Agostino transfer to his mother 75 shares of the stock of L. N. Renault & Sons, Inc., and in addition thereto, shall pay to the clerk in Chancery for the use of the state the sum of fifty ($50) dollars as a fine for his contempt, and that until he does so he be committed to the common jail at Mays Landing, New Jersey, and there remain until he shall comply, and until he pays the costs of this proceeding, including counsel fee, and the $50 to the use of the state, and until the further order of this court.

"It appears that the government has filed a lien against all

of the capital stock of the Renault Company and, necessarily, the transfer of stock by John D'Agostino to Mrs. D'Agostino will be subject to the lien of the government in every respect.

"Costs of this proceeding, together with a counsel fee of $250 will be assessed against John D'Agostino, with no costs against Ordille and Elmer.

"John D'Agostino, through his counsel, at the time of the hearing in this matter, asked that the final decree be opened and certain amendments be made, and that Carmon D'Agostino be brought in as a party defendant in order that the ownership of the one share of stock aforesaid might be litigated in the original suit. This motion is denied and John D'Agostino left to the prosecution of his bill of complaint heretofore filed for that purpose."

*Mr. Samuel Kaufman* and *Mr. Samuel Backer,* for the appellant.

*Messrs. Moore & Butler (Mr. James N. Butler,* of counsel), for the respondent.

PER CURIAM.

The order under review will be affirmed, for the reasons expressed in the opinion of Vice-Chancellor Sooy.

*For affirmance*—THE CHIEF-JUSTICE, PARKER, CASE, BODINE, DONGES, HEHER, PERSKIE, COLIE, WELLS, RAFFERTY, DILL, FREUND, JJ. 12.

*For reversal*—None.